IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
District Judge S. Kato Crews

CIVIL ACTION NO. 1:24-cv-02519-SKC-STV

INTEGRITY SOLUTIONS, LTD.,

      Plaintiff,

v.

MCS CONSULTING, INC.,
ENERGY SYSTEMS CONSULTING, LLC,
MAKERS SOLUTIONS, LLC,
GEO-PRIME, LLC,
MEAGAN CUMBERLAND,
JOEL LINDSTROM,
KYLE MADER,

      Defendants.

---

## ORDER DENYING PLAINTIFF'S
## *EX PARTE* APPLICATION FOR TRO (DKT. 11)

---

The above-referenced Application for an *ex parte* temporary restraining order (TRO) is now before the Court. The Court has determined no hearing is necessary. The Court denies the Application because Plaintiff has failed to demonstrate irreparable harm and a likelihood of success on the merits, as explained more particularly below.

## BACKGROUND

This is a civil action for breach of contract and misappropriation of trade secrets under both federal (18 U.S.C. § 1836 et. seq.) and Colorado law (Colo. Rev.

Stat. § 7-74-101 et seq.). This action arises from Defendants' alleged breach of their contractual obligations with Plaintiff, and their alleged unlawful and unauthorized download of Plaintiff's claimed trade secrets and confidential and proprietary technology.[1] Plaintiff contends "Defendants' actions have resulted in lost business for Plaintiff, and have harmed and will continue to irreparably harm Plaintiff unless, and until, relief is granted by the Court." Dkt. 1 (Verified Complaint), ¶4.

## BACKGROUND

The Verified Complaint (VC) alleges Defendants MCS Consulting, Inc., Energy Systems Consulting, LLC, and Makers Solutions, LLC, are companies formed by its former independent contractors, Defendants Meagan Cumberland, Joel Lindstrom, and Kyle Mader, respectively. *Id.* at ¶¶54, 62, and 68. Cumberland, Mader, and Lindstrom had regular access to Plaintiff's confidential and proprietary technology and trade secrets while performing work for Plaintiff as independent contractors. *Id.* at ¶¶58, 64, and 71. According to the VC, these individual Defendants "through their respective Independent Contractor Entities, were bound by the contractual provisions in their respective Subcontractor Master Services Agreements ("Agreement") with Plaintiff.[2] *Id.* at ¶87; *see also* Exhs. A, C, and E to the VC.

_____

[1] The Court notes Plaintiff does not assert its various breach of contract claims against Defendant Geo-Prime, LLC.

[2] The Agreements appear to be identical in all material respects. They each provide they "shall be governed exclusively by and construed in accordance with the laws of the State of Colorado, and venue shall lie in (sic) City and County of Denver." Also, the individual Defendants appear to have signed their respective agreements "doing

In a nutshell, and according to the VC, in the weeks and days leading up to Defendants' respective departures from Plaintiff, they "accessed, reviewed, and/or downloaded thousands of Plaintiff's files, as well as Confidential and Proprietary Technology and Trade Secret material belonging to Plaintiff, including the HCA Software, the PFIM Software, the ADM Tool, the SafeSeam Tool, and Plaintiff's activation database." *Id.* at ¶117. The VC alleges, "[u]pon information and belief, Defendants intend to use or disclose, and have used or disclosed, Plaintiff's Confidential and Proprietary Technology including trade secret information, as part of Defendants' newly formed competing commercial venture, [Defendant] Geo-Prime, LLC." *Id.* at ¶3.

## LEGAL PRINCIPLES

Federal Rule of Civil Procedure 65(b) governs a court's entry of temporary restraining orders. "The requirements for issuing a [temporary restraining order] mirror the requirements for issuing a preliminary injunction." *Briscoe v. Sebelius*,

---

business as" the entity they formed, although this is less clear regarding the agreement signed by Defendant Lindstrom. In any event, to the extent the individual Defendants are sued in their capacity of "doing business as" one of the entity Defendants is immaterial for purposes of this Order and the Court need not decide this issue at this time. *See J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 801 (10th Cir. 2016) (finding no legal distinction between the individual defendant and the individual defendant "doing business as" an entity); *Turner v. Metro. Prop. & Cas. Ins. Co.*, No. 18-CV-00653-JFH-JFJ, 2021 WL 432172, at *1 n.1 (N.D. Okla. Feb. 8, 2021) ("Doing business under another name does not create an entity distinct from the person operating the business. The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner.") (quotations and citation omitted).

927 F. Supp. 2d 1109, 1114 (D. Colo. 2013). A party seeking a temporary restraining order or preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015) (citation omitted). The movant must show that "all four of the equitable factors weigh in its favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (emphasis and citation omitted).

"Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018) (citation omitted). Granting such drastic relief is the exception, not the rule. *See United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989) (citing *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)).

## ANALYSIS AND FINDINGS

While the VC alleges breaches of various provisions of the Agreements, the Application only argues breach of the contractual non-solicitation obligation. Dkt. 11, p.8. Thus, on Plaintiff's breach of contract claim, the Court only considers the request for a TRO in the context of the alleged breach of Section 3.05 (the non-solicitation section) of each Agreement. The only additional claims argued in the Application are

the claims for misappropriation of trade secrets arising under federal and state law. For purposes of its ruling on the Application, the Court assumes, without deciding, that Plaintiff's claimed trade secrets qualify as such under federal and state law.

1.   **Plaintiff Has Not Shown It Will Suffer Irreparable Harm on Its Claims for Breach of the Non-Solicitation Agreement and Misappropriation of Trade Secrets**

"A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction . . . ." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). "Irreparable harm . . . is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003) (citing *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quoting *Heideman*, 348 F.3d at 1189 (alteration adopted)).

Plaintiff has not established it will suffer irreparable harm. First, Plaintiff has failed to demonstrate its alleged harms cannot be remedied through an award of

money damages. For example, in the Application, Plaintiff argues it "has already been harmed by the loss of a major client[.]" Dkt. 11, p.9. The Application also describes harm in the form of a "deprivation of future recurring business from Easton and Sentinel." *Id.* at p.13. The VC similarly alleges "Defendants' actions have resulted in lost business for Plaintiff[.] Dkt. 1, ¶4; *see also id.* at ¶¶234, 254 (each alleging "lost business"). Even more, the VC includes a specific dollar amount as an award of damages it seeks from each Defendant for their breach of their respective Agreements. Dkt. 1, ¶¶194 (pleading breach of contract damages for $1,136,004.65 "in direct consequential and liquidated damages" from Cumberland/MCS Consulting); ¶205 (pleading breach of contract damages for $1,017,650.00 "in direct consequential and liquidated damages" from Mader)/Maker Solutions, ¶217 (pleading breach of contract damages for $897,355.00 "in direct consequential and liquidated damages" from Lindstrom/Energy Systems Consulting). In light of these verified allegations, Plaintiff has failed to demonstrate there is no adequate remedy at law. *See Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) ("[L]oss of business can be compensated in money damages."); *Mountain Med. Equip., Inc. v. Healthdyne, Inc.*, 582 F. Supp. 846, 848 (D. Colo. 1984) ("[T]he essence of the concept requires a substantial threat of harm to the movant that cannot be compensated by money."); *Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) ("The harm that had already occurred could be remedied through damages."); *Ice Corp. v. Hamilton Sundstrand Corp.*, 615 F. Supp. 2d 1256, 1263 (D.

Kan. 2009) (approving award of damages for misappropriation claims based on lost sales as a result of misappropriation).

Second, given the nature of the Agreements' liquidated damages clause, the Court finds those provisions preclude a finding of irreparable harm. The liquidated damages clause states:

> Liquidated Damages
> 5.01. In the event of *a breach by Contractor of the obligation contained in Article 3 of this Agreement*, payment of liquidated damages shall be made for the period during which Contractor continues to be in breach of such obligation. The parties to this Agreement agree that damages are difficult to compute and incapable of precise determination. The parties further agree that Company could suffer irreparable harm if there is a breach of the provision of this Agreement, and Company is entitled to a temporary restraining order, temporary injunction and permanent injunction if there is a breach *in addition to damages. These damages will be calculated as follows: Contractor, as the breaching party, will pay Company an amount calculated as 5 times the amount billed to Company by Contractor in the twelve months preceding the termination of this Agreement. The parties agree that the amount established by this paragraph as liquidated damages is reasonable under the circumstances existing at the time of the execution of this Agreement.*

Dkt. 1-1, p.8; 1-3, p.8; 1-5, p.8 (emphasis added).

Article 3, referenced in the liquidated damages clause, contains the Non-Solicitation clause in Section 3.05. In its Application, Plaintiff focuses on Defendants' alleged breach of Section 3.05, thus expressly triggering the liquidated damages clause. The Court finds the liquidated damages clause unambiguously and expressly applies to a breach of Section 3.05. And the liquidated damages clause unambiguously sets forth a calculation of damages for a breach of Section 3.05, which the parties to

those Agreements agreed resulted in an "amount that was reasonable under the circumstances existing at the time of the execution of this Agreement." To be sure, Plaintiff further invokes and *seeks to enforce* the liquidated damages clause in its allegations in the VC, and it performed and included a monetary calculation of its liquidated damages for the alleged breach of Section 3.05. Dkt. 1, ¶¶94, 194, 205, 217, 235, 255. *See Harvey Barnett, Inc. v. Shidler*, 143 F. Supp. 2d 1247, 1255 (D. Colo. 2001) ("Therefore, any loss to ISR is not 'irreparable,' as ISR wrote the clause and chose the amount that it felt would compensate its loss. I therefore conclude that ISR has failed to meet its burden to show irreparable loss."). Because the liquidated damages clause is expressly tied to a breach of the non-solicitation provision (Section 3.05) of the Agreements, the Court finds Plaintiff has failed to show irreparable harm.[3]

Third, the Application argues "Defendants already agreed that [Plaintiff] would suffer irreparable harm in the event of Defendants' breach of their contractor agreements, and that [Plaintiff] would be entitled to a temporary restraining order,

---

[3] The Court has considered whether Plaintiff has shown a probability of future irreparable harm. While that too is speculative on the current record, even if the Court assumes it, the result would be the same. The liquidated damages clause expressly pertains to the breach of the non-solicitation provisions in Section 3.05 and it further provides that "payment of liquidated damages shall be made *for the period during which Contractor continues to be in breach of such obligation.*" (Emphasis added). Thus, Plaintiff has not shown a probability of future irreparable harm in light of its monetary remedy. *Cf. DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1271 (10th Cir. 2018) ("not all plaintiffs who have already suffered lost customers, stolen trade secrets, or intangible injury can show a sufficient probability of future irreparable harm to warrant a preliminary injunction").

temporary injunction, and permanent injunction in the event of a breach." Dkt. 11, p.14. But the Court gives little credence to the parties' agreement to injunctive relief or irreparable harm in the event of breach. Their agreement alone does not alleviate Plaintiff of its burden to make the requisite showing of its entitlement to injunctive relief under all applicable elements. *See Dominion Video Satellite*, 356 F.3d at 1266 ("While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief." (surveying cases)); *TTEC Holding, Inc. v. Da Silva*, No. 20-CV-03645-CMA-STV, 2020 WL 7398775, at *3 (D. Colo. Dec. 16, 2020) (noting "courts have rejected similar attempts by litigants to contract around the required showing for injunctive relief" and assigning no weight to the injunctive relief provision in the parties' contract).

The same analysis and findings apply to Plaintiff's misappropriation claims under state and federal law. Plaintiff expressly pleaded a monetary remedy in liquidated damages for Defendants' alleged misappropriation of trade secrets, to wit:

> Plaintiff is therefore entitled to an award of damages adequate to compensate Plaintiff for its actual losses pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(I), but no less than $3,051,009.65 in liquidated damages, collectively, 5 times the amount billed to Plaintiff by Defendants . . . in the twelve months preceding the termination of their respective Subcontractor Services Agreements.

\*        \*        \*

9

> Plaintiff is therefore entitled to an award of damages adequate to compensate Plaintiff for its actual losses pursuant to C.R.S. § 7-74-104(1), but no less than $3,051,009.65 in liquidated damages, collectively, 5 times the amount billed to Plaintiff by Defendants . . . in the twelve months preceding the termination of their respective Subcontractor Services Agreements.

Dkt. 1, ¶¶235 and 255, respectively. The fact that Plaintiff affirmatively avails itself of the liquidated damages provision to claim specific monetary damages under its misappropriation claims is countervailing to a showing of irreparable harm.

Plaintiff additionally argues (a) the value of its ability to exclusively control its propriety materials is incalculable; (b) the value of PFIM software version 3.5 downloaded by Defendants is difficult to ascertain; and (c) "it is very likely that Defendants are already leveraging" its confidential information for Geo-Prime's benefit. But these arguments are too speculative to be availing to a showing of irreparable harm. *See, e.g., TTEC Holding*, 2020 WL 7398775, at *3 (finding allegations of a "significant risk" and a "high probability" of harm too vague and speculative to show irreparable harm); *cf. DTC Energy Grp.*, 912 F.3d at 1271-73 (affirming denial of preliminary injunction based on loss of customers, loss of goodwill, and erosion of competitive position where plaintiff failed to show a probability of future irreparable harm and the prior loss of customers and general decline of plaintiff's value as a business can be quantified in money damages). Further, the Tenth Circuit has held that irreparable harm is not presumed in misappropriation cases because the federal Defend Trade Secrets Act and the

Colorado Uniform Trade Secrets Act "merely authorize and do not mandate injunctive relief . . . ." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017).

For all of these reasons, Plaintiff has failed to demonstrate it is likely to suffer irreparable harm absent injunctive relief.

**2.      Plaintiff Has Not Shown A Likelihood of Success on the Merits of its Claim for Breach of the Non-Solicitation Agreement**

Under Colorado law, a non-solicitation agreement is a form of non-competition agreement. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 526 (Colo. App. 2011). As such, "an agreement not to solicit an employer's customers is enforceable so long as its purpose is to protect the employer's trade secrets and it is reasonably limited in time and geographic scope." *Id.* (citations omitted). That is, it must be no broader than necessary "to protect the promisee's legitimate interests, and it must not impose hardship on the promisor." *Reed Mill & Lumber Co. v. Jensen*, 165 P.3d 733, 736 (Colo. App. 2006), *as modified on denial of reh'g* (Feb. 15, 2007). Whether a specified geographic scope and duration in a non-solicitation agreement is reasonable is a fact-driven inquiry based on the facts of each case. *Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1283 (D. Colo. 2003).

The non-solicitation agreements here contain no geographic scope at all. *See* Dkt. 1-1. P.6 (Section 3.05); Dkt. 1-3, p.6 (Section 3.05); Dkt. 1-5, p.6 (Section. 3.05). As such, Plaintiff fails to demonstrate a likelihood of success on the merits because it has not shown the non-solicitation clause in the Agreements is reasonable in its geographic scope.

3.     **Plaintiff Has Not Shown A Likelihood of Success On the Merits Re:
Geo-Prime**

Defendant Geo-Prime is not a party to any agreement with Plaintiff. It is an

entity purportedly formed by the individual Defendants as a competitor to Plaintiff.

Unlike the other Defendants, there is no evidence Geo-Prime—a Texas LLC with its

principal place of business in Texas—consented to this Court's jurisdiction. And

neither the VC nor the Application suggest any facts or evidence regarding this

Court's personal jurisdiction over Geo-Prime.

A court cannot order injunctive relief without personal jurisdiction over the

party subject to that order. *See AMBI Distribution Corp. v. Doe*, No. 21-CV-1961-

WJM-NYW, 2021 WL 3269234, at *2 (D. Colo. July 28, 2021) (citing *Ruhrgas AG v.

Marathon Oil Co.*, 526 U.S. 574, 584 (1999)); *see also Advanced Tactical Ordnance

Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("In order

for the district court's preliminary injunction to be valid, that court had to have

personal jurisdiction over the defendant."); *cf. Williams v. Life Sav. & Loan*, 802 F.2d

1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought . . . , the

district court has an affirmative duty to look into its jurisdiction both over the subject

matter and the parties. In reviewing its personal jurisdiction, the court does not

assert a personal defense of the parties; rather, the court exercises its responsibility

to determine that it has the power to enter the default judgment.").

Plaintiff has not demonstrated personal jurisdiction over Geo-Prime. It has

failed to show a likelihood of success on the merits against Geo-Prime as a result.

*AMBI Distribution Corp.*, 2021 WL 3269234, at \*5 (denying *ex parte* motion for TRO because plaintiff failed to establish personal jurisdiction and thus the court found plaintiff failed to show a likelihood of success on the merits).

*   *   *

Because Plaintiff failed to meet its burden to establish both irreparable injury and likelihood of success on the merits, the Court does not address the other elements for a TRO. *See First W. Capital Mgmt. Co*, 874 F.3d at 1144. For the reasons shared above, the Court DENIES Plaintiff's Application for a TRO, on the record before it. The Court FURTHER DENIES Plaintiff's request to issue an Order to Show Cause. Doing so would turn the burden of proof on its head regarding the showing required to obtain a preliminary injunction. As discussed above, the parties' agreement alone does not alleviate Plaintiff of its burden to make the requisite showing of its entitlement to injunctive relief. *See supra* p.9, citing cases.

DATED:  September 20, 2024

BY THE COURT:

_____
S. Kato Crews
United States District Judge